**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 18, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-10750
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GORDON GRADY HENRY,

Defendant-Appellant.

* * * * *
Consolidated with
No. 04-11085
* * * * *

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HECTOR CARDONA,

Defendant-Appellant.

--------------------
Appeals from the United States District Court
for the Northern District of Texas
USDC No. 1:03-CR-88-ALL-C
--------------------

Before DAVIS, SMITH and DeMOSS, Circuit Judges.

PER CURIAM:

Gordon Grady Henry pleaded guilty to possession of an
unregistered firearm.  In his plea documents he admitted
possessing a 12-gauge sawed-off shotgun.  Hector Cardona pleaded

guilty to being a felon in possession of a firearm.  In his plea documents he admitted to possessing a 16-gauge sawed-off shotgun. Both defendants' sentences were increased because the court determined that the sawed-off shotguns were "destructive devices" under U.S.S.G. § 2K2.1(b)(3) of the applicable 2003 edition of the sentencing guidelines.

In these consolidated appeals, Henry and Cardona challenge their sentence increases and contend that a sawed-off shotgun is not a "destructive device."  Henry also challenges the sentencing court's application of the federal sentencing guidelines in light of United States v. Booker, 125 S. Ct. 738 (2005)

Even after Booker, this court reviews de novo the interpretation and application of the federal sentencing guidelines.  United States v. Villegas, 404 F.3d 355, 359 (5th Cir. 2005).  The applicable guidelines, commentary, and statutes define "destructive device" to include "any type of weapon which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter." U.S.S.G. § 2K2.1, comment. (n.4) (Nov. 2003); see also 26 U.S.C. § 5845(f)(2) (adding the qualifier, "except a shotgun or shotgun shell . . . generally recognized as particularly suitable for sporting purposes").  Thus, a sawed-off shotgun with a barrel diameter of more than one-half inch meets the definition of "destructive device" set forth in the guideline commentary.  See

United States v. Wynn, 365 F.3d 546, 552 (6th Cir. 2004) (holding same), vacated on other grounds and remanded for reconsideration in light of Booker, 125 S. Ct. 1026 (2005).

Henry and Cardona assert that there is no evidence to establish the bore diameters of the guns they possessed. However, their factual resumes, which they signed and which they affirmed in open court, contain admissions that Henry possessed a 12-gauge shotgun and that Cardona possessed a 16-gauge shotgun. We take judicial notice that both a 12-gauge shotgun and a 16-gauge shotgun have bore diameters in excess of one-half inch. See People v. Cortez, 442 N.Y.S.2d 873, 874 (N.Y.Sup. 1981) ("A 10-gauge shotgun has a bore of .775 of an inch; 12-gauge .725; 16-gauge .665. . . ."); see also FED. R. EVID. 201 (b), (c), and (f); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 940 (1971). Consequently, the sawed-off shotguns possessed by the defendants each meet the guideline definition of "destructive device" because each weapon can "expel a projectile by the action of an explosive or other propellant, and . . . has any barrel with a bore of more than one-half inch in diameter." U.S.S.G. § 2K2.1, comment. (n.4) (Nov. 2003). Neither appellant argues that a sawed-off shotgun "is generally recognized as particularly suitable for sporting purposes" under § 5845(f)(2), and this court has concluded that a sawed-off shotgun, when possessed unlawfully, is useful only for "violent and criminal purposes."

United States v. Serna, 309 F.3d 859, 863-64 (5th Cir. 2002)

(internal quotation marks and citations omitted).

In addition, the guidelines allow the same weapon both to

provide the foundation for the base offense level and to support

a two-level increase, if the weapon is a "destructive device."

See U.S.S.G. § 2K2.1, comment. (n.11) (Nov. 2003).  This is

because destructive devices "pose a considerably greater risk to

the public welfare than other National Firearms Act weapons."

Id.  A straightforward application of the guidelines and 26

U.S.C. § 5845 shows that the appellants' claims warrant no

reversal of their sentences.

Henry contends that the application of the sentencing

guidelines violated his right to trial by jury as recognized by

Blakely v. Washington, 124 S. Ct. 2531 (2004) and Booker.  Henry

did not raise his Blakely/Booker claim in the district court.

Accordingly, it is reviewed only for "plain error."  United

States v. Valenzuela-Quevedo, 407 F.3d 728, 732 (5th Cir. 2005)

(citing United States v. Mares, 402 F.3d 511, 513-14 (5th Cir.

2005)).  Under the plain-error standard, this court may reverse

only if the appellant demonstrates "(1) error, (2) that is plain,

and (3) that affects substantial rights."   Id. at 732-33

(citation and internal quotation marks omitted).  If these three

conditions are met, this court has the discretion to correct the

error, "but only if (4) the error seriously affects the fairness,

integrity, or public reputation of judicial proceedings." Id. at 733 (citation and internal quotations marks omitted).

The destructive-device increase was based on facts admitted by Henry in his factual resume and in open court. Therefore the Sixth Amendment right to a jury trial is not implicated. See Valenzuela-Quevedo, 407 F.3d at 733. Nonetheless, by sentencing Henry under a mandatory guidelines scheme, the district court committed an error that was "plain." Id. (citing Booker, 125 S. Ct. at 769). To show a violation of his substantial rights, Henry must also show that "that the district judge would have imposed a different sentence" if sentencing Henry under the post-Booker advisory guidelines scheme. Id.; Mares, 402 F.3d at 521-22.

Henry does not demonstrate that his sentence likely would have been different under an advisory application of the guidelines. On the contrary, he concedes that the court might impose the same sentence. Further, the district court denied a motion for a downward departure, sentenced Henry in the middle of the guidelines range, and stated: "I believe the sentence does adequately address the sentencing objectives of punishment and deterrence." Consequently, Henry has not shown that the sentencing error affected his substantial rights.

The judgment of the district court is

AFFIRMED.